**Ronald KOHLMAN**

v.

**John J. NORTON, Warden, Federal Correctional Institution, Danbury, Connecticut, et al.**

**Civ. No. B-74-258.**

United States District Court,
D. Connecticut.

July 31, 1974.

Michael J. Churgin, New Haven, Conn., for petitioner.

William F. Dow, III, Asst. U. S. Atty., New Haven, Conn., for respondents.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

This prisoner's habeas corpus challenge to an adverse decision of the United States Board of Parole raises issues concerning the Board's use of its regulation requiring that parole denial be accompanied by a statement of reasons. 28 C.F.R. § 2.13, 39 Fed.Reg. 20029 (June 5, 1974). Petitioner, incarcerated at the Federal Correctional Institution, Danbury, was sentenced to five years' imprisonment pursuant to 18 U.S.C. § 4208(a)(2) upon conviction of bank robbery in violation of 18 U.S.C. §§ 2113(a) and (b). He alleges, and the Government does not dispute, that the robbery was accomplished by the presentation of a threatening note, and that no weapon was used.[1] Petitioner also alleges he was under the influence of alcohol at the time of the offense. On February 1, 1974, the Board denied him parole and continued him to expiration of his sentence, after an earlier denial in 1972. The latest denial was accompanied by two reasons:

1. Your release at .this time would depreciate the seriousness of the offense committed and is thus incompatible with the welfare of society.

2. You have received a serious disciplinary infraction at Lewisburg.

Petitioner unsuccessfully pursued all administrative remedies.

Petitioner contends that, according to the Board's guidelines, 28 C.F.R. § 2.20, 39 Fed.Reg. 20030 (June 5, 1974), his

---

1. A telephonic inquiry to the United States Attorney for the Western District of New York has revealed that Kohlman's indictment for bank robbery contained two counts based upon 18 U.S.C. §§ 2113(a) and 2113(b). He was not indicted under 18 U.S.C. § 2113(d) for committing bank robbery by use of a dangerous weapon or device.

offense should have been rated as "High" severity—"Robbery (No Weapon or Injury)"—and his offender characteristics as "Good" based on a salient factor score of 8. The appropriate guideline would therefore be 20–26 months. Since he has been incarcerated 33 months at the time he filed his petition, he challenges the use of the "depreciating the seriousness of the offense" reason to continue his confinement beyond the applicable guideline period. He further contends that the Board actually rated his offense as "Very High" severity—"Robbery (Weapon)"—which erroneously led the Board to select a guideline period of 36–45 months. The Government concedes that petitioner's offense was classified as "Very High" severity.

■ In Battle v. Norton, 365 F.Supp. 925 (D.Conn.1973), this Court ruled that the Board's use of its now familiar "depreciate the seriousness of the offense" reason was an acceptable shorthand way of informing a prisoner that he would not be paroled because he had not been confined for the period of time indicated by the *appropriate* guideline. See also Lupo v. Norton, 371 F.Supp. 156 (D. Conn.1974). Those decisions did not require the Board to parole a prisoner by the expiration of his appropriate guideline period; they simply indicated that the stock reason, which indicates use of the guideline table, cannot satisfy the Board's own requirement of giving a meaningful reason when it is used to explain a decision to confine a prisoner longer than the table indicates. See also Diaz v. Norton, 376 F.Supp. 112 (D. Conn.1974). Thus, if the Board had rated petitioner's offense as "High" se-

verity, the "depreciating the seriousness of the offense" reason would not have been a valid reason for denying him parole after the expiration of 26 months.

■ Here, however, the Board is not asserting the right to use its stock reason to keep a prisoner beyond the guideline period. Rather the Board is asserting the far more dubious position that it can select a guideline period based on an offense severity rating totally lacking in factual support. In *Lupo* this Court acknowledged that in selecting an appropriate offense severity rating, the Board was not limited to the prisoner's convicted offense, but could use an offense he was alleged to have committed, provided the prisoner was told of this basis for his rating and thereby given some opportunity to controvert the allegations.[2] That decision recognized the practice, well illustrated by the facts of that case, of convicting a defendant, by trial or plea, of some offense less serious than the initial charges. But nothing in *Lupo* permits the Board to rate offense severity according to criminal conduct that is *not* alleged. The Board has wide latitude in resolving disputed issues of fact, including the facts of a prisoner's criminal conduct. But the most generous deference to Board fact-finding cannot insulate its decision from judicial review "when its decision has no basis in the prisoner's file." United States ex rel. Johnson v. Chairman of New York State Board of Parole, 500 F.2d 925, 930 (2d Cir. 1974).

This case differs from *Lupo* in that no distinction is sought to be drawn between the prisoner's alleged offense and his convicted offense.[3] The criminal

---

2. The Government makes no claim that petitioner was told, at any time during the parole decision-making process, that there were any facts to indicate he was armed during commission of the offense.

3. It is therefore unnecessary to consider the Government's contention that *Lupo* should be applied prospectively only. In any event, as pointed out in Grasso v. Norton, 376 F.

Supp. 1116 (D.Conn.1974), the considerations that bear on a retroactive application of a rule that affects parole eligibility hearings are quite different from those that arise when a new rule is sought to be applied to final convictions, see Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), or even to parole revocations, see Morrissey v. Brewer, 408 U.S. 471, 490,

code does not distinguish between armed and unarmed robbery. But that is precisely the distinction the Board has elected to make in its own rating of offense severity. Since the Government concedes that petitioner had no weapon, the Board's decision rating him on the basis of armed robbery and using that rating as part of the grounds for an adverse parole decision cannot stand. Such a decision, lacking any evidentiary support, subverts the Board's own guideline regulations, and denies petitioner the most elemental aspect of due process, Thompson v. City of Louisville, 362 U.S. 199, 206, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), a constitutional standard of renewed though as yet uncertain vitality in judicial review of parole decision-making. Compare United States ex rel. Johnson v. Chairman of New York State Board of Parole, *supra,* with Menechino v. Oswald, 430 F.2d 403 (2d Cir. 1970), cert. denied, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971).

■ The Government suggests the Board's decision may nonetheless rest on its second reason concerning petitioner's prison infractions at Lewisburg. The second reason itself may be vulnerable to challenge. The Second Circuit in *Johnson* has recently expressed the view that parole denial because of the prisoner's poor discipline record is "questionable," 500 F.2d at 931, and even if this reason is permissible, there is further question whether it is adequately expressed without reference to "essential facts," which *Johnson* requires in support of at least some reasons for parole denial, 500 F.2d at 934.

Wholly apart from any challenge to the second reason, however, the infirmity of the Board's first reason, in the circumstances of this case, requires a renewed exercise of its discretion. When an agency is charged with responsibility for making a sensitive decision such as release on parole, involving, as the

Board's regulations acknowledge, a variety of factors, 28 C.F.R. § 2.19, 39 Fed. Reg. 20030 (June 5, 1974), reliance on an improper ground of decision must vitiate the Board's action. See Securities and Exchange Commission v. Chenery, 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943). When the Board itself has set a guideline maximum of 19 months less for an unarmed robber than for an armed robber, there is simply no basis for speculating that if it had properly rated this prisoner as an unarmed robber, it would nonetheless have required him to serve the full five years of his (a)(2) sentence solely because of some unspecified infractions of prison discipline. Perhaps that is a decision the Board is entitled to reach, but this petitioner is entitled to a new parole hearing at which the Board must, with the utmost sincerity, determine whether it still wishes to deny parole now that it knows that this petitioner's appropriate guideline period is 20 to 26 months, and not 36 to 45 months. In the event that, after a new hearing, a decision should again be reached to confine petitioner beyond his appropriate guideline period, such a decision must be accompanied by adequate reasons.

Since petitioner is scheduled for transfer to a community treatment center on August 16, 1974, this Court's order will not allow the Board the customary sixty days to schedule the required hearing. Transfer to the community treatment center should not be delayed by this decision, except to the brief extent necessary to afford petitioner a parole hearing when the Board's hearing examiners visit Danbury next month.

Accordingly, it is hereby ordered that a writ will issue discharging the petitioner unless the Board grants him a new parole hearing at the next regularly scheduled visit of parole hearing examiners at the Federal Correctional Institution, Danbury, in August, 1974.

92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Retroactive application of new rules in the latter situations requires reassembling evidence

to prove an occurrence long after it has happened, a circumstance rarely present in parole eligibility hearings.